IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| BENNET S. GODWIN,<br><br>              Plaintiff,<br><br>vs.<br><br>SOUTHWEST RESEARCH INSTITUTE,<br><br>              Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No.  1:04CV69DAK |

This matter is before the court on Defendant Southwest Research Institute's motion for summary judgment. The court held a hearing on the motions on December 20, 2005. At the hearing, Plaintiff was represented by Philip C. Patterson, and Defendants were represented by Janet Hugie Smith and Robert O. Rice. The court took the motion under advisement. The court has considered carefully the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

Southwest Research Institute ("SWRI") is an independent, non-profit applied science and engineering, research and development organization headquartered in San Antonio, Texas. One section of SWRI, the Training Technologies Section, develops training courses and manuals for its clients, many of which are military-related. SWRI conducts this course development work in several different offices, including one located at Hill Air Force Base, Utah.

Plaintiff Bennett Godwin worked at SWRI's Hill Air Force Base office from December 1989 when he began doing contract work until February 27, 2003. When he was hired as a regular employer in August of 1990, his position was "senior research technologist." The parties dispute whether his primary position was as a courseware developer or a graphic artist illustrator. However, the evidence demonstrates that he primarily created graphics for use by other course developers in their course manuals. Although he performed work as a course developer, his employee reviews state that his work in that area was not satisfactory. However, he excelled as a graphic artist.

Godwin took leave on February 4, 2002, to visit his dying mother in Florida and later to attend to her estate. Godwin remained in Florida until July, 2002. After being in Florida for three or four weeks, Godwin began working part-time. While a part-time employee, Godwin's hourly rate was unchanged. He also continued to have the same benefit coverage.

After returning to Utah in July of 2002, Godwin remained on part-time status because SWRI claimed that there was not enough graphic art work to justify his working full time. Automated tools and software products for graphic art production were becoming more sophisticated and course developers no longer needed to rely on the services of a graphics artist. After learning that he was going to remain on part-time status, Godwin continued to work at SWRI and never requested to return to full-time.

Starting in 2001, revenue for SWRI's Hill AFB office began to significantly decrease. On February 19, 2003, Godwin's supervisor recommended that Godwin be discharged for lack of work. On February 27, 2003, Godwin was terminated and offered a severance of $19,000. SWRI told Godwin that he was being released because there was not enough work to retain the services of a graphics illustrator.

Since Godwin's termination, SWRI has not hired a new graphic artist to perform the kind of work Godwin performed. Due to the reductions in business and revenue, SWRI has laid off four other employees since Godwin. SWRI has also accepted voluntary resignations from eleven others and not filled those positions. Due to a lack of available work, the staffing at the Hill AFB office fell from 25 employees in 2002 to 21 employees in 2003, to 11 employees in 2004. Since February 2003, SWRI has filled only two positions at HILL AFB and neither position was a graphics artist.

Godwin became eligible for a retirement fund after he had worked at SWRI for several years and became vested in that retirement after having worked at SWRI for five years. Godwin has received this benefit. SWRI also has a "Transitional Benefit" program for its employees who have reached early retiree status. The program allows employees who reach at least the age of fifty-eight, but not yet sixty-five, to receive a one-time supplemental benefit upon voluntary retirement. This benefit is additional taxable salary representing what would have been SWRI's contribution to the individual's retirement account during the time between his/her early retirement date and sixty-fifth birthday.

Godwin was fifty-seven when he was terminated. If he had reached the age of fifty-eight before his termination, he would have been eligible for the Transitional Benefit if he had chosen to take voluntary retirement. Because the Transitional Benefit represents what SWRI would have continued to pay into the employee's retirement fund, it is based on the salary the employee was making when he/she took voluntary early retirement. Therefore, SWRI calculates the amount of Transitional Benefit that Godwin could have received at his final annual salary based on his part-time status. If Godwin had retired at age fifty-eight, he would have received a Transitional Benefit of 63% of his final annual salary of $27,519, or a total of $17,337.

3

Godwin believes that it should be calculated based on a full-time rate. Nevertheless, when SWRI terminated Godwin, it explained to him that it was offering him severance pay of $19,000 as part of a proposed severance package, which amounted to more than he would have received had he received the Transitional Benefit. Godwin, however, refused to accept the severance package SWRI offered to him.

Godwin filed his Charge of Discrimination on December 31, 2003. Because of a mailing mistake with the original materials Godwin sent to the EEOC, Godwin's Charge was 308 days after he learned of his termination on February 27, 2003. Godwin states that he mailed his EEOC Intake Questionnaire to the Arizona EEOC office on November 24, 2003. On December 16, 2003, he telephoned the Phoenix office because he had not received a response. Based on EEOC instructions, Godwin telefaxed a copy of his Intake Questionnaire to the Phoenix office on December 16, 2005. In return, the Phoenix office mailed Godwin a Charge of Discrimination which Godwin signed December 27, 2003, and which was received by the Phoenix office on December 31, 2005. The Post Office ultimately delivered Godwin's original Intake Questionnaire to the EEOC's Phoenix office on February 6, 2004.

Godwin's age discrimination claim is based on the fact that he was fifty-seven when he was discharged and that he was told that there was insufficient work when SWRI was hiring a new full-time twenty-one-year-old employee, Drew Olsen. SWRI asserts that Olsen is a lower level technician who performs basic technical support work whereas Godwin was a high level specialist. Godwin's ERISA claim is based on his allegation that he was terminated eleven months before his fifty-eighth birthday, when he could have become eligible for the Transition Benefit.

## DISCUSSION

### Motion For Summary Judgment

SWRI asserts that Godwin's claims for age discrimination and violations of ERISA fail as a matter of law for several reasons. SWRI claims Godwin filed his Charge of Discrimination for age discrimination over 300 days after being notified of his termination, he cannot establish a prima facia case of discrimination, and he cannot demonstrate the SWRI's non-discriminatory reason for terminating him was a pretext for age discrimination. Regarding his ERISA claim, SWRI asserts that the Transitional Benefit Godwin claims it attempted to interfere with is not governed by ERISA because it is a one-time payment, there is no basis for finding an intent to interfere with his retirement benefits, and Godwin was paid a severance larger than the Transitional Benefit he would have been entitled to receive.

**A. Age Discrimination Claim**

SWRI argues that Godwin's age discrimination claim fails as a matter of law because he did not meet the applicable statute of limitations, he cannot establish a prima facie case of discrimination, and he is unable to show that SWRI's legitimate, non-discriminatory reason for terminating him is a pretext for discrimination.

*1. Statute of limitations*

The parties agree with respect to the law applicable to the statute of limitations issue. "To bring a valid claim under the ADEA, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the underlying discriminatory act." *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1225 (10th Cir. 2001). "A cause of action accrues under the Age Discrimination in Employment Act 'on the date the employee is notified of an adverse employment decision." *Hulsey v. Kmart Inc.*, 43 F.3d 555, 557 (10th Cir. 1994).

Godwin never filed a charge of discrimination based on his change to part-time status. His charge of discrimination was filed December 31, 2005, which was 308 days after he was informed of his termination on February 27, 2003. Godwin agrees that the February 27, 2003 notification date is the date upon which his cause of action accrued. However, he asserts that his conduct was without fault and evidences that he diligently pursued filing his ADEA claim within 300 days. Godwin relies on the fact that he mailed his intake submissions on November 24, 2003, and that he telefaxed his questionnaire on December 16, 2003.

Although there is case law holding that a charging plaintiff should not bear the burden of the EEOC's misfeasance, they do not appear to be applicable to Godwin's circumstances in this case. Godwin appears to assert Post Office misfeasance, but an improperly addressed envelope is not misfeasance. Even if it was the post office's error, it would not toll the limitation period under Tenth Circuit law. "It is well settled that equitable tolling of the ADEA is appropriate only where the circumstances of the case rise to the level of active deception where a plaintiff has been lulled into inaction by her past employer, state or federal agencies, or the courts." *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1226 (10th Cir. 2001).

There is no evidence in this case that Godwin's employer, the EEOC or the court is at fault. The undisputed evidence demonstrates that it was Godwin himself who misaddressed his correspondence with the EEOC. Therefore, the court concludes that the charge of discrimination was untimely. Accordingly, his claim fails as a matter of law.

### 2. *Prima facie case and Pretext*

Even if Godwin's claim was not time barred, he has failed to establish a prima facie case or pretext. In a reduction in force context, a plaintiff must prove: "(1) the claimant is within the protected age group; (2) he or she was doing satisfactory work; (3) the claimant was discharged

6

despite the adequacy of his or her work; and (4) there is some evidence the employer intended to discriminate against the claimant in reaching its RIF decision." *Stone v. Autoliv ASP, INC.*, 210 F.3d 1132, 1137 (10th Cir. 2000). "The fourth element may be established 'through circumstantial evidence that the plaintiff was treated less favorably than younger employees during the [RIF].'" *Id.* (citation omitted).

In this case, despite the dispute regarding Godwin's material job duties, there were no younger employees who were ever hired into Godwin's job classification after Godwin's discharge. The evidence demonstrates that Godwin's duties were, over time, absorbed by other employees as the advance of technology empowered other employees to perform their own graphic art work. SWRI released Godwin because it had no further work for him.

Olson was hired to perform basic technical support work at an entirely different level than Godwin. Olson's position required different skills and tasks which Godwin lacked. Further, SWRI was fully entitled to make the business decision that it would hire Olsen, at less pay, to perform tasks for which Godwin was over-qualified to perform. There is no evidence before the court that Godwin was treated less favorably than others.

There is also no real dispute that Godwin was the first of several employees who were part of an overall reduction in force of SWRI's Hill AFB office. Not only were four other employees also discharged, but eleven positions were left open by employees leaving voluntarily. Because Godwin has not established that he was treated less favorably than younger employees during the RIF, he has not established a prima facie case.

For basically the same reasons that he cannot demonstrate a prima facie case, Godwin cannot establish that SWRI's legitimate non-discriminatory reason for his termination was a pretext for discrimination. The undisputed evidence demonstrates that Godwin was discharged

due to a lack of work in his skill set.  There was too little work to justify full-time employment as of 2002 and, by 2003, there was too little work to justify the part-time employment.  There is no dispute that before releasing Godwin, SWRI looked elsewhere for work for Godwin and found none.  Moreover, Godwin's discharge was the first or a larger reduction in force based on fiscal necessity.

Because SWRI has established legitimate, non-discriminatory reasons for its actions, Godwin must then prove by a preponderance of the evidence that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'"  *Revera*, 365 F.3d at 920.  "The relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs.'" *Id.* at 924-25.  "In determining whether the proffered reason for a decision was pretextual, we examine the facts as they appear to the person making the decision.'" *Id.* at 925.

There is no evidence that SWRI's reasons for terminating Godwin were pretextual or that Godwin's age was an influencing factor in SWRI's decision. Therefore, Godwin is unable to meet his burden.  There is no evidence that there was other work available for Godwin.  To the extent that Godwin contends that he could perform jobs at SWRI that others performed, his arguments fail because SWRI was not obligated to have him perform work at which he was not proficient.  It is SWRI's prerogative to determine which employees are best qualified to perform certain tasks.  When performing course development work, SWRI was not happy with his performance.  To establish pretext, Godwin "must call into question the honesty or good faith of SWRI's assessment of his abilities." *Exum v. United States Olympic Comm.*, 389 F>3d 1130, 1137 (10th Cir. 2004).  However, the employment records in this case document that Godwin was not satisfactory at course development work in general.  Godwin has not demonstrated any

8

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the SWRI's proffered legitimate reasons. *Danville v. Regional Lab Corp.*, 292 F.3d 1246, 1251 (10th Cir. 2002). Therefore, even if his discrimination claim was not time barred, Godwin has not demonstrated a prima facie case or pretext. Accordingly, his age discrimination claim fails as a matter of law and is dismissed.

**B. ERISA Claim**

Godwin has fully vested in all retirement benefits for which he is eligible and he has received them. Godwin's ERISA claim focuses on the fact that SWRI released him from his work eleven months before he would have been eligible for the Transitional Benefit payment. SWRI's personnel manual defines Transitional Benefit as follows: "Regular employees who have met the qualifications for retiree status and are age 58 but not yet 65, are eligible for a supplemental benefit on voluntary retirement. This benefit is additional taxable salary representing what would have been the Institute's contribution to the individual's retirement account during the time between his/her retirement date and 65th birthday."

Godwin claims that he should have been restored to full-time employment following his return to Utah consistent with an agreement he made with his manager in February 2002 when he was in Florida. Godwin also claims that the emails sent between local and division management and human resource personnel demonstrate that a multitude of termination scenarios were considered for Godwin, one of which included allowing Godwin to continue employment until he was eligible for full retirement at age fifty-eight with a Transitional Benefit.

As an initial matter, SWRI contends that the Transition Benefit Payment is not protected by ERISA because it is a one-time obligation with no ongoing administrative scheme. A plan, fund, or program covered by ERISA requires the existence of an ongoing administrative scheme.

29 U.S.C. § 1002(1).  Because the Transitional Benefit was paid at the happening of one event–an employee's early retirement–SWRI contends that the benefit is not an ERISA protected benefit and summary judgment should issue.  Godwin claims that the language from the personnel manual demonstrates that the Transitional Benefit is available only as a component within its retirement program and is only available to an SWRI employee whose retirement interests have been vested and who has obtained "retiree status."

Regardless of whether the Transitional Benefit is protected by ERISA, Godwin's ERISA claim fails because he cannot show the required specific intent to interfere with ERISA-protected benefits.  *See Phelps v. Field Real Estate Co.*, 991 F.2d 645, 649 (10th Cir. 1993).  "In order to establish this intent, the courts have looked to circumstantial evidence surrounding the employment decision because there is rarely direct evidence fo wrongful intent."  *Id.*  Courts in the Tenth Circuit analyze circumstantial evidence in ERISA claims by employing the burden-shifting analysis articulated in *McDonnell Douglas*.

Applying this framework, Godwin must first establish a prima facie case that SWRI acted to interfere with his rights under the retirement plan.  *Winkel v. Kennecott Holdings Corp.*, 3 Fed. Appx. 697, 706 (10th Cir. Jan. 10, 2001).  If Godwin meets that burden, the burden shifts to SWRI who must articulate a legitimate, non-discriminatory reason for Godwin's discharge.  *Id.*

Godwin has not demonstrated that SWRI acted with any discriminatory intent with regard to his ERISA rights. Godwin has received all retirement benefits in which he has vested.  To the extent that he claims that he was denied a Transitional Benefit, he was offered a severance package that exceeded the value of the Transitional Payment to which he could have become entitled.  He had not become entitled to a Transitional Benefit when he was terminated and SWRI was not obligated to keep him employed until he was eligible.  As discussed above,

SWRI had a legitimate non-discriminatory reason for terminating Godwin. There is no evidence that there was work for him to do. Therefore, summary judgment is also proper with respect to Godwin's ERISA claim.

## CONCLUSION

Based on the above reasoning, Defendant's Motion for Summary Judgment is GRANTED. Plaintiff's case is dismissed in its entirety, each part to bear its own costs and fees.

DATED this 9th day of January, 2006.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge